Our one o'clock case is People v. Boling. That's case number 4-150076. For the appellant, Alan Andrews. For the appellee, David Manchin. Mr. Andrews, you may proceed. May it please the court, Mr. Manchin, as you well know, I'm Alan Andrews from the Appellate Defender's Office and I'm representing Mr. Boling in this appeal. This is an appeal for Mr. Boling's second trial on allegations that he sexually abused his girlfriend's daughter. After the first trial, he was convicted of two counts of predatory criminal sexual assault. This court ordered a new trial, finding various evidentiary errors at that trial. After this court remanded the cause for a new trial, the state refiled an aggravated criminal sexual abuse charge that it had dismissed prior to the first trial. It also filed a brand-new predatory criminal sexual assault charge, one that had never been filed before. Mr. Boling was convicted of those two charges and he was convicted of one of the remaining predatory criminal sexual assaults. It's my position, as I stated in issue three, that the convictions for the two charges that were filed prior to the second trial should be dismissed. They were, or at least appear to be, the result of a vindictive prosecution designed to punish Mr. Boling for having prevailed on his direct appeal. Counsel, before you go any further, I'm very confused about count three and count five because it seems like you're both saying they are one and the same. But which is it? Is it three or five? And how was it represented to the jury as three or five? It wasn't done consistently. It was inconsistently done. It was charged as count five. It was presented to the jury as count three. I think to cover for the gap, he'd been acquitted of the original count three at the first trial, so they didn't want to instruct the jury on one, two, four, and five. So five is three, three is five. And that's one of the counts that you're saying the state should not have been allowed to file? Yes, count five, which is count three in the instructions. Okay, thank you. The way these vindictive prosecution cases are analyzed seem to differ. I look to the case that State cited, People v. Coonley, and it sets out a three-step analysis that I think works as well as anything. In the first step, according to that decision, the defendant has the opportunity to objectively prove the existence of a retaliatory motive and that he would not have been prosecuted but for that motive. We have a number of objective facts in this case that I believe satisfy that test. First, we know that count four was the same. Isn't there a problem, though, when the defendant raised no issue at trial, thereby depriving the state the opportunity of addressing this claim on the record at a time and a place for the trial judge to address it where it couldn't matter? No, in this instance, in this specific case, it does not matter at all. So there's no possible explanation the state could have provided here? I don't think there's a truthful one. They stated that. Well, let's assume when I say there's no possible explanation that incorporates a truthful explanation. Sure. There's nothing that could be said here? Judge, here's why we did it, and it's not a violation of the Pierce case because. And here's why there could be, as I see it, no correct truthful explanation. They said on the record that we knew about the allegations in count five from the get-go as soon as she was interviewed by Detective Silent. So the only thing they can present is an objective intervening circumstance, something that happened after the appeal and before the trial. That happened before the first trial. They've already given their explanation. It's legally inadequate, and there's absolutely no reason to remand it for an explanation, and the state has absolutely suffered no harm by defense counsel's failure to raise this. They gave their best explanation. It's legally inadequate, and as far as I can see, it's all over. The other reason why their explanation doesn't really matter is because there doesn't even have to be an actual vindictive prosecution in order for there to be reversal. The U.S. Supreme Court has repeatedly stated that the appearance of vindictiveness is what is important here. The rationale for this rule is we don't want defendants, this defendant in particular, but other defendants who might be aware of this case, they're not to be deterred from exercising their vindictive acts by the prosecution. So it's the appearance. Even the appearance of a vindictiveness is enough to warrant reversal, because even the appearance will deter the exercise. And that's irrebuttable? The appearance is irrebuttable. Yes, I think Blackledge v. Perry, if I could quote from that, the rationale of our judgment in the Pierce case, however, was not grounded upon the proposition that actual retaliatory motivation must inevitably exist. That means even if they could say, hey, we're not, as long as it appears to be vindictive, it should still be reversed. And, in fact, the Blackledge v. Perry... Well, it seems like to me you're saying if they do it, it appears to be vindictive. Yes. That in and of itself is enough. In fact, they did it. Yes. And you would think that applies also to the just reinstating? Definitely. That was originally filed but not prosecuted. It definitely applies to that. The case cited by the state, Peeble v. Kuhn-Lee, is very distinguishable. The Johnson case that I cited specifically mentioned cases that had been dismissed and reinstated in the same prosecution. So did the Allen decision from this court that was cited in the reply brief. The Kuhn-Lee case relied upon by the state is distinguishable because it talked about, when it talked about pretrial, it talked about a completely separate case that had been dismissed and had never gone to trial and was not part of the case that was appealed. Now, personally, I think Kuhn-Lee's is wrongly decided because it was based on this idea that if a prosecutor brings a new case, that couldn't possibly be retaliatory, which I think would say that people lack imagination. Of course, you could picture a prosecutor resurrecting some other case in an effort to punish a person if that's what he wanted to do. But the point is, the defendant cannot be put in a worse position than he was prior to his first trial after winning on appeal. Prior to his first trial in this case, that aggravated criminal sexual abuse charge had been dismissed for whatever reason. By reinstating it, he has now been put into a worse position than he was prior to his first trial for all appearances simply because he won on appeal. He's being punished for winning his appeal. What if you had two different prosecutors? Let's say you had one state's attorney at the time of the initial trial and a decision was made to dismiss these charges, and then it goes up on appeal and it comes back and you've got a different state's attorney looking at the exact same facts, thinking, no, I think that those facts would have supported these charges. Are you saying that that second state's attorney could not reinstate without being held to this presumption of vindictiveness? Yes, I agree. That is what I'm saying. And I think, again, it goes back to the appearance of vindictiveness. I don't think it matters which state's attorney happens to be in charge at the time. I mean, state's attorneys, they're promoted, they lose elections, and the simple fact that there's a different prosecutor I don't think would, under this Pierce analysis, I don't think that simply because a new prosecutor had been elected, say, for example, that he could dump a bunch of charges on the defendant and then say it's not vindictive. When you look at, like, the Johnson case, they talk about the state's powerful motive to not have to retry a case, a powerful motive to deter people from appealing. And I think that that motive, not wanting to retry a case, would apply whether you're the original prosecutor or you're some other prosecutor. It's still extra work. It's digging up witnesses that you don't know if you can find. Whether you're the same prosecutor or not, that analysis applies. And if the presumption does apply, is it a rebuttable presumption? Again, I find it rather confusing the cases that say the state has a chance to rebut and the cases that say the appearance of it is enough because the appearance alone, you know, deters the exercise of the rights. Again, it's my position that in this particular case, you don't have to reach that question because the state has already offered its explanation and it's legally inadequate. So I don't see that this court has to decide the question of whether or not somebody has a right to rebut this charge because in this case, they can't. So I think the court's questions have covered all the points I was going to make on that issue. If there are no other questions on that, I would like to briefly discuss the first issue, the improper instruction on Count 5, which was presented to the jury as Count 3. The element instruction in that case, it was predatory criminal sexual assault, which requires a penetration. It states that the defendant committed an act of sexual penetration as placement of his hand or finger on the sex organ. Now, because it's a hand or finger, the statute clearly requires an intrusion, however slight. And unfortunately, the jury was instructed that there need be no intrusion. They were instructed that putting it on was sufficient. To me, it's as plain as day that the instruction tells a jury to convict Mr. Bowling without finding any penetration, any intrusion. They can find only that the hand or finger was on. The state, however, thinks that my interpretation is imaginative. I would say that the state's closing argument ensured that the jury, in fact, would have adopted my interpretation, that they would have believed there did not have to be any intrusion, no matter how slight. In the prosecutor's closing argument, he did discuss the correct definition of penetration that was given, that there had to be an intrusion, however slight. But the rest of his closing arguments ignored that requirement and talked about the language of putting it on. For example, he said, the skin of his hand touched the skin of her vaginal area. That's count three. The prosecutor said, the skin of his hand made physical contact, however slight, with the skin of her vaginal area. It has to be penetration, however slight, not contact, however slight. And at the end, the prosecutor asked the jury to convict my client for placing his hand and fingers on her vaginal area, as I think it will say, referring to the instruction. Those arguments explicitly told the jury that on was sufficient, while legally, obviously, it isn't. It has to be an intrusion, no matter how slight. The only other argument from the state I would address at this point, the state believes that the fact that there was a correct definition would cure the error in this case. The short answer to that is that would probably be true if the jurors were lawyers and they were lawyers who were familiar with criminal sexual assault law. The problem is, obviously, they were not. So they don't know which jury instruction is correct. So they cannot possibly say, they could only guess, whether the elements instruction was correct or whether the definition was correct. So we can't rely on conflicting instructions to cure this error. And I would further suggest that the prosecutor's repeated statements that they could convict him for putting his hand or finger on would cause the jury to select the improper elements instruction, the one that said on. It would cause them to reject the correct definition instruction. Did the jury ask any questions? I don't recall that they did. That I don't know for sure. If there were no other questions, I would stand on the rest of my arguments. How did the charge read? Did the charge similarly say, defendant knowingly committed an act of sexual penetration as to the placement of his hand or finger on the sex organ of K-8? Yes, it said on. It was just like the instruction. Was the charge read to the jury? It was read at the beginning. I'm sure of that. To the veneers? At least to the veneers. Yes, I hadn't thought about that. What was the discussion with regard to the definition of sexual penetration? The prosecutor's discussion? Or the defense attorney or both? The defense attorney, his discussion of the offense also said on. He basically read the instruction. Who was the defense attorney? Ortega? I don't know. Who was the prosecutor? I don't remember their names. So, again, I would ask this court to vacate the two convictions for counts 4 and 5 to grant a new trial for the remaining count, or in the alternative to grant Mr. Bowling a new sentencing hearing based on 5, issue 5. Thank you very much. You're asking for a dismissal of count 5? Count 3 is presented to the jury. Counts 4 and 5 is charged. A reversal, not a dismissal. A reversal. With remand? No, no, no. Reversal. They say dismiss. They should be reversed. No new trial. The only thing that could have a new trial would be the original count 1, which I argue should be reversed based upon Captain Seiler's testimony. But the two new charges, 4 and 5 or 3 and 4, they have to be vacated. No new trial. Well, suppose on count 3 or 5, whichever you want to call it, that I agreed with your argument on the issue of instructions but disagreed with your argument whether the state had the right to file on remand. Then would you be asking for an outright reversal or an outright reversal with remand? If you rejected dismissing those two counts, then I would be asking for a new trial. Okay. So you think there was enough evidence as to count 3 to allow the jury to draw a reasonable inference of penetration versus just mere speculation? Yes. There was testimony that would support a finding of actual penetration. What was it? She told Captain Seiler that she was touched inside and out, and she told the nurse that he rubbed hard. And it hurt. And it hurt. And I believe that both of those, a jury could find penetration were they properly instructed on the subject. Well, I thank you for your candid answer to my question. You'll have rebuttal if you want. Okay. Thank you, sir. Mr. Manchin? Good afternoon, Your Honors. May it please the Court, Counsel. In this case, the question of prosecutorial vindictiveness is not properly before this Court because the defendant simply did not object, and it is patently unfair to call the prosecutor vindictive when he has had absolutely no chance to answer it. The defendant's claim that his statement, we knew about these charges is an explanation for vindictiveness is farcical because he was never accused of being vindictive. There is a possible explanation for the recharge or for the new charge based upon the victim's testimony at the trial saying, okay, this testimony shows that these charges were more viable than I thought before the first trial. That's a possible explanation that is not vindictiveness. Or he could have had a further conversation with the victim between the two trials, which led him to believe that, yes, this new charge is more viable than the original information would have suggested. So that to say that there's a presumption of vindictiveness when the prosecutor has never been accused. What about Mr. Andrews' fundamental claim that the problem is this is new and different and more Well, under Blackwoods v. Perry, what they prohibit is raising a more serious crime for the same offense and conduct. In that case, what happened, there was a two-tier system, I forget what state it was, where you could be tried in a misdemeanor in a one-level court, but if you were convicted, you had an automatic right to a new trial in a different level of court. The defendant was found guilty of the misdemeanor and then applied for the new trial and was charged with a felony based upon the exact same facts, the exact same offense. And they said, no, you can't charge the defendant with a more serious offense for the same conduct. Well, Mr. Andrews' argument is that this is a situation where the defendant went on appeal and then the argument is it's as if the state is going to punish him for that by increasing the stakes beyond those which the defendant confronted in the original conviction that was appealed and reversed. Why isn't he right? Well, the only one that would apply to would be the new charge, count five, as far as the hand touching the sexual organs. Was that the criminal sexual abuse charge? No. Predatory criminal sexual assault. That's a predatory criminal sexual assault. The aggravated one was one that was no process at the start of the first trial. And I submit that when that was recharged and retrialed, the defendant is exactly the same position he was before the first trial. So there can be no vindictiveness. But the state decided to not pursue that charge for whatever reason. Now after a successful appeal, there they are, there's the state doing it now. Why isn't that punishment for the defendant for winning the appeal? It's because it's not a charge for a greater offense, which is what is required under black and Jewish apparel. Who is the prosecutor in this case? Scales? I honestly don't recall, Your Honor. What's the problem down in Coles County, Mr. Banchin? You would have thought that after this court pointed out the manifest errors committed the first time through that someone would pay careful attention this time. Was it the same judge, by the way, Schick? I think it was, wasn't it? It probably was, Your Honor. Well, is this just kind of practice court stuff going on here? You know, trial advocacy at the felony level in Coles County? I had the same thought when I read this record, that everybody in this case seems to be trying to get a third trial in this proceeding. Both the state's attorney with some errors, goofy errors, were like giving the instruction on the lesser offense of sexual assault rather than aggravated. Or instructed the jury on something that they had nothing to do with at all. Yeah, that's the kind I'm referring to. That was the defendant's argument number two with regard to elements of the aggravated criminal sexual abuse, where the jury was given one instruction for aggravated criminal sexual abuse, where the defendant's charged, where the elements are sexual acts with the child under 13. You know, IPI makes no reference to charges by counts. How is it that courts seem to be, they think the committee forgot to do that? Why are they referring to counts at all? Why do they read indictments at all? How does that work? What's going on? It's probably standard practice that's gone back to Lincoln's time that nobody's really thought about why we do things this way. We've done it because we've always done it this way. The best of all possible reasons. Yes. And the general rule, one basic rule, is the defendant is entitled to a fair trial and not a perfect trial. And I think this case is a poster child for that principle. As far as the instruction on- Before you get past the vindictiveness issue here, Justice Steigman was asking something about were these more serious charges. Or you had indicated the refiling was not a more serious charge. But there was a predatory criminal sexual assault charge that was filed. And were the various predatory criminal sexual assault charges mandatorily consecutive upon conviction? I don't recall if they were or not. I think they did run consecutively, yes. Okay. I mean, if you start adding these charges upon remand, even though they may be the same classification and each individually the same as what had been charged in the original case, if they're mandatorily consecutive, I mean, you're looking at a much different case. You're saying that that still doesn't bring it into the realm of presumptively vindictive as a more serious charge in that circumstance? Yes, Your Honor. He's faced, at the time of the original trial and the time of this second trial, he's faced in the same exact range of sentences as far as consecutive. Because in the first trial, he was charged the same number of predatory criminal sexual assaults as he's charged in the second trial. But in the first trial, the aggravated criminal sexual abuse was dismissed. Correct. The second trial it was not. So he was subject to a greater range of sentencing penalties in the second trial than the first, right? Because of the additional penalty. Well, it depends on before the start of the trial, because the aggravated count was no cross by the state after the start of the first trial. So it was not dismissed pretrial. It was depending at the time the first trial started, the defendant was facing the charges of the aggravated one and was facing the sentences for that. So he's in the same position as you is on the second one without respect to the last charge regarding the touching by hand. And the touching by hand is completely distinct from any of the charges that were involved in the first one So the defendant has raised a question about the new charges violating the remand order of this court from the first trial. It was a general remand, so the remand itself does not create any kind of bar to any new charges. It just boils down to this question of vindictiveness, which was never raised by the defendant until his appeal. And this is an issue, it was in People v. Holmes, it's cited in my brief, where the expression said that the defendant cannot raise a claim of vindictiveness for the first time on appeal. And I think that that is where this case should be resolved. With respect to the instruction on predatory criminal sexual assault, the test for instructions is not the ingenuity of counsel can attribute to the instruction on appeal, but how would an ordinary person view the instructions below. What about Mr. Andrews' argument concerning how the case was argued by the prosecutor to the jury? Didn't that exacerbate the uncertainty or problem with the instruction? The problem with that argument is the defendant never raised any objection to the prosecutor's closing argument at trial, and he also did not raise a separate issue regarding the prosecutor's closing argument on appeal, saying that the statement was misstating the... Well, all that's interesting, good, technical stuff, but doesn't respond to my question. Doesn't the argument the prosecutor made to the jury exacerbate the problem with the instructions in the first place? No, because there is no problem with the instruction. The jury was expressly told that you have to find, for this offense, you have to find penetration and insertion. The instructions, the defendant was charged with three counts of predatory criminal sexual assault, one for penis, one for vaginal intercourse, one for anal intercourse, and then one for touching. As to each count, the jury was given separate instructions with the language, as to vaginal, penis to vagina, as to penis to anus, as to end to sexual organ. The as to is not a definitional instruction. It is not a description of the elements of the offense. It is simply a way to distinguish the jury. Okay, you've got three counts. We have to distinguish between them somehow. Rather than citing the full language of the instruction each time, just simply say, as to, and then the particular description of the conduct. I don't see how you can say there's no problem with the instruction because it's inherently contradictory. And you're looking at this from the standpoint of the jurors that are reading this and hearing this. But you have sexual penetration on the one hand, which is defined, and then in the very same sentence you say, or it says, as to placement of his hand or finger on the sex organ. And how is that not inherently contradictory? Because you look at the instructions as a whole, and they use an as to language even in the verdict forms. The as to language is not a definition. It does not describe the offense. It just delineates between counts for the jury. Okay, so go ahead and explain how it is that that is rationalized by the juror as he or she is hearing this and reading this. What does hand or finger on the sex organ then mean relative to sexual penetration? You go back to the definition of sexual penetration, which is, let's see, it was People Instruction 16b. It's a term, sexual penetration is any contact between sex organs or any part of the body of one person, the sex organ or the other, or intrusion, however slight of any part of the body. I understand what the definition for sexual penetration, how that reads. But what I'm trying to figure out is what are the jurors to do with that language, hand or finger on the sex organ? Are you saying that they should know to just disregard that? Because they can't regard it in any way and give it a literal interpretation because it is inherently contradictory to the definition of sexual penetration. The as to language is simply a way to delineate between the counts charged with a defendant. How would the jury know that? Because it's in every single instruction with regard to predatory sexual assault. In every single instruction it says, as to count and whatever count it was, you sustain the charge. You know, the IPI criminal contains some instructions that I wrote, as I remember them, to distinguish between the types of first degree murder. There's type A and type B, which are descriptions that contain no possible misleading language. To the extent it was necessary to distinguish between the types of predatory criminal sexual assault charges here, how about just call them type A? That's the type that's committed doing so-and-so. Type B, type committed doing such-and-such. So you don't have the issue that Justice Harris has now raised where a jury could get confused or misunderstand. Does it require penetration or is it you place your hand or finger on a sex organ? It could have been done that way, and if defendants had objected below, the problem could have been eliminated by rephrasing the as-to language in such-and-such. Well, what are the ideas about why the defendant agreed to these particular instructions? Should this undermine our confidence in the verdict here? I suppose there's another question to ask. Your position is not. Why not? I don't think that this instruction can raise any doubts as far as the liturgy of the conviction or as far as based upon confusion of the jury as to what type of conduct is required. Because the defense was not that, yeah, I touched her, but I didn't touch inside her. The only time I touched her was giving her a bath. And any touching of the private parts was purely incidental and not intentional or anything like that. His defense was, I never touched her in any way, shape, or form, whatever. So that this distinction between on or in is a somatic one being raised by the defendant now to try to create an imaginative interpretation of the instruction to which he agreed below. We reversed the previous conviction in this case, concluding, if I remember correctly, that the various trial errors cumulatively amounted to plain errors. That's essentially what Mr. Andrews is arguing. If we agreed with him, would this be the new indoor record for finding plain error twice in the same case on appeal back-to-back? If it doesn't set a record, it will probably come close, Your Honor. Just checking. You've been around a long time, Mr. Manchin. I figured if there were others like this, you would know. I have not seen, I have seen maybe one or two cases where there's been back-to-back trials on multiple occasions because of trial errors before. But I submit that in this particular case that the errors that were made are not severe enough to require reversal, and in particular, the instruction regarding the distinction between age of the victim, the victim knowing, not understanding the nature of the act, which was the instructions on criminal sexual abuse and aggravated criminal sexual abuse that were given. Mr. Manchin, before you're finished, as I understand it, the charging instrument in this case used the word on instead of in. Correct. The elements in the instruction used the word on instead of in for the issues instruction. I think that's also correct, is it not? Let me see. I'm pretty sure that's correct. See, I'm trying to see what the instruction is. Yeah, the proposition, it was the jury, the defendant committed an act of sexual penetration at the placement of his hand or finger on the sexual organ of care. Right, on, it says on. Then on top of that, the verdict form also says the same thing. We, the jury, find the defendant guilty of predatory criminal sexual assault of a child as to the placement of his hand or finger on the sex organ of K.A. Then, prosecution also used an argument, the word on instead of in. I know you're just arguing what the case, what you're allowed to do under the facts of this case, but it seems a little, it's a tough sell to say that the jury wasn't at minimum confused, given those four things. Well, the prosecutor used both on and in, and the defendant, Well, the defendant also used in as far as what was required to be proved. Still more confusion. You're out of time. Thank you for answering my question. I appreciate it. Any rebuttal? You sure? I would just point out concerning the instruction, the IPI doesn't even call for any sort of explanation of what constitutes penetration. It just says that the state has to prove penetration. So when the state, whether it was intending to differentiate or not, added that to the IPI, it really generated the confusion in this case. Just to make clear, there wasn't a separate definition instruction for each count. There was only one definition on penetration I'm talking about. Yes. Which was to apply to all three criminal sexual assault charges. It was the standard sex organ on body count. So they would have had, the juror would have used one definition of penetration issue as to all three counts. The definition, yes. Right. Right. Yes. And, you know, a further area of confusion is that it says a body part has to have intrusion however slight. And, you know, there was some dispute in the past about what constituted a body part that required intrusion. Now it's clear that a finger does. But the jury wouldn't know that, and they might well have assumed on was sufficient. If there are no further questions, thank you very much. Thanks to both of you. The case is submitted and the court stands.